Antonio Hicks, Cal. Bar No. 195438
antoniohicks@nls-la.org
David Pallack, Cal. Bar No. 90083
dpallack@nls-la.org
Yvonne Mariajimenez, Cal. Bar No. 120012
ymariajimenez@nls-la.org
Neighborhood Legal Services of
Los Angeles County
13327 Van Nuys Blvd.
Pacoima, CA 91331
Tel.:  (818) 834-7589
Fax:  (818) 896-6647

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO VELASCO and ANABEHT VELASCO, <br><br> Plaintiffs, <br><br> vs. <br><br> JPMORGAN CHASE BANK, a New York Corporation; JPMORGAN CHASE CALIFORNIA CORPORATION, a Delaware corporation; QUALITY LOAN SERVICE CORPORATION, a California corporation, <br><br> Defendants. | Case No.  CV 11-6464-JFW (RZx) <br><br> (Hon. John F. Walter) <br><br> **FIRST SUPPLEMENTAL COMPLAINT FOR:** <br><br> **(1) BREACH OF CONTRACT** <br> **(2) ACCOUNTING** <br> **(3) WRONGFUL FORECLOSURE** <br> **(4) VIOLATIONS OF RESPA** <br> **(5) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** <br> **(6) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** <br> **(7) VIOLATIONS OF THE CLRA** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

1

**INTRODUCTION**

1.     Plaintiffs Armando and Anabeht Velasco, husband and wife, bring this case to prevent defendants bank and loan servicer from selling their home at a foreclosure sale, currently set for July 11, 2011.  Plaintiffs Velasco entered into an agreement to modify their home loan through the Home Affordable Modification Program (HAMP), which the federal government has put in place to help homeowners preserve their homes.  Plaintiffs have complied in full with every provision of their HAMP modified loan agreement with defendants.  Nevertheless, defendants have proceeded to foreclose on plaintiffs' home, while continuing to accept full payments from plaintiffs under the HAMP agreement.  Defendants' actions constitute a breach of the HAMP contract and a violation of other applicable state laws.

2.     Defendants' disregard for plaintiffs' rights and their continuing threat to sell plaintiffs' home have caused them extreme mental and physical distress.  Plaintiffs seek damages for defendants' wrongful actions, an accounting of all sums due under the HAMP contract and deed of trust, declaratory relief, and an injunction prohibiting defendants from foreclosing on their home and continuing to engage in unlawful conduct.

**PARTIES**

3.     Plaintiff Armando Velasco is an individual and at all relevant times herein was a resident of the County of Los Angeles, State of California.  Mr. Velasco suffered a stroke in 2009 and became very sensitive to stress.  When subjected to stress, Mr. Velasco suffers severe headaches.

4.     Plaintiff Anabeht Velasco is an individual and at all relevant times herein was a resident of the County of Los Angeles, State of California.

5.     Plaintiffs are informed and believe and thereupon allege, defendant JPMorgan Chase Bank is a New York corporation doing business in the County of Los Angeles, State of California.

6.  Plaintiffs are informed and believe and thereupon allege, defendant JPMorgan Chase California Corporation is a Delaware corporation doing business in the County of Los Angeles, State of California (Hereafter, JPMorgan Chase Bank and JPMorgan Chase California Corporation, will be collectively referred to as "Chase.")

7.  Plaintiffs are informed and believe and thereupon allege, defendant Quality Loan Service Corp. ("Quality Loan Service") is a California corporation doing business in the County of Los Angeles, State of California.

8.  Plaintiffs are ignorant of the true names and capacities of defendants sued herein as Does 1-100, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities when they have been ascertained.  Plaintiffs are informed and believe and thereupon allege each of said fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and plaintiffs' injuries as herein alleged were proximately caused by the acts and/or omissions of each of them.

9.  At all times mentioned herein, each defendant acted as an authorized agent, employee or other representative of each other defendant.  Each act of each defendant complained of herein was committed within the scope of said agency, employment or other representation, and/or each act was ratified by each other defendant.  Each defendant is liable, in whole or in part, for the damages and injuries plaintiffs suffered.

**SUBJECT PROPERTY**

10.  The real property which is the subject of this action, (the "Home"), is a two-unit, multi-family home located in the County of Los Angeles, State of California, commonly known as 14002 Weidner Street, Pacoima, California 91331, Assessor's Identification Number 2618-007-006; legally described as:

3

THE MACLAY RANCHO LOT COM N 41 29'03" W 509.75 FT
AND N 48 30' E 540.67 FT FROM MOST S COR OF BLK 299 TH
N 48 30' E 60 FT TH NW ON SW LINE OF REMICK AVE 135 FT
TH W ON A CURVE CONCAVE TO S, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 37, PAGE(S)
5 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY.

## FACTUAL ALLEGATIONS

11.   Plaintiffs have owned and lived in their Home for more than 12 years.

12.   In or about December 2006, Plaintiffs refinanced their Home and
executed a promissory note secured by a deed of trust against the property in the
amount of $500,000.00 (the "Loan").

13.   Plaintiffs are informed and believe, and thereupon allege, that at some
time thereafter, EMC Mortgage acquired the servicing rights to the Loan.
Plaintiffs are informed and believe, and thereon allege that EMC Mortgage is a
registered trade service mark of JPMorgan Chase & Co.; and that JPMorgan Chase
Bank, N.A. services loans under the EMC Mortgage name.

14.   Plaintiffs encountered some financial difficulties in 2008 and
eventually were unable to make the monthly mortgage payments on time.

15.   On or about January 2, 2009, Chase began foreclosure proceedings on
plaintiffs' Home by causing to be recorded a Notice of Default.

16.   Prior to January 2, 2009, plaintiffs contacted Chase to request a
mortgage loan modification review.  Despite plaintiffs' extraordinary efforts to
work in good faith with Chase, Chase failed and refused to respond to plaintiffs'
requests.

17.   In or about October of 2008, plaintiffs contacted Neighborhood Legal
Services of Los Angeles County, a private, non-profit law firm, to help seek a

4

1  mortgage modification review from Chase.  After months of negotiations, on or

2  about February 27, 2009, Chase offered plaintiffs a Loan Modification Repayment

3  Agreement, which was accepted by plaintiffs to prevent foreclosure of their home.

4  Although plaintiffs fully performed under the agreement, on or about May 4, 2009

5  Chase filed and recorded a Notice of Trustee Sale scheduling a foreclosure auction

6  of plaintiffs' Home on May 20, 2009. Plaintiffs' counsel halted the impending sale

7  by providing Chase proof of plaintiffs' compliance with the Repayment

8  Agreement.

9       18.   In or about March 2009, the Obama Administration implemented the

10  HAMP administered by the U.S. Treasury.  Plaintiffs immediately requested a

11  HAMP modification review from Chase and on or about May 21, 2009, plaintiffs

12  accepted a Trial Period Plan (TPP) offer from Chase under HAMP.  The TPP

13  required monthly payments of $1710.58 starting June 2009.  Plaintiffs fully

14  performed under the TPP by making monthly mortgage trial payments to Chase.

15       19.   On or about November 11, 2009, despite plaintiffs' compliance with

16  the TPP, Chase served plaintiffs with a Notice of Trustee Sale and scheduled a

17  foreclosure auction of plaintiffs' Home on November 18, 2009.  Again plaintiff's

18  counsel halted the impending sale by providing Chase proof of plaintiffs'

19  compliance with the TPP.  During this time, plaintiff Armando Velasco suffered

20  severe stress such that he had to be hospitalized.  That stress was a direct result of

21  Chase's unjustifiable actions placing plaintiffs' Home at risk of sale.  Between

22  February 4, 2010 and July 2010, Chase failed and refused to approve a HAMP

23  mortgage loan modification without justification.  Chase lost and/or misplaced

24  significant financial information and documentation provided by plaintiffs and

25  their counsel.  On or about August 2, 2010, after months of negations with Chase,

26  plaintiffs again submitted to Chase another complete HAMP application with

27  supporting documentation.

28

20.   On or about September 15, 2010, Chase re-commenced foreclosure proceedings on plaintiffs' home by causing to be recorded a Notice of Default.

21.   On or about November 15, 2010, Chase offered Plaintiffs a new TPP under HAMP.  The TPP required three monthly payments of $1892.27.  Under the terms of the TPP, if plaintiffs made all three payments and qualified under the HAMP guidelines, Chase would permanently modify the terms of their Loan.

22.   Plaintiffs tendered and Chase accepted four monthly TPP payments for the months of December 2010 through March 2011.

23.   On or about March 22, 2011, Chase offered plaintiffs a permanent HAMP modification.

24.   Under the terms of the HAMP Contract, the Loan was permanently modified as of April 1, 2011.  The HAMP Contract established a new principal balance and payment schedule and capitalized all past due amounts.

25.   Prior to March 30, 2011, Chase procured a property insurance policy "forced-placed insurance" on plaintiffs' Home.  Plaintiffs have repeatedly requested that Chase provide information on the entity providing that insurance. To date, Chase has not responded to that request.

26.   On or about March 30, 2011, plaintiffs signed the HAMP Contract and returned it to Chase, via overnight United States Postal Service Express Mail, enclosing a certified check representing the first mortgage payment due under the HAMP contract.  Defendants Chase accepted and acknowledged receipt of the signed HAMP contract and April mortgage payment.

27.   On or about April 28, 2011, plaintiffs sent Chase their May mortgage payment, made payable by personal check, via overnight United States Postal Service Express Mail.  Defendants Chase accepted and acknowledged receipt of the May mortgage payment.

28.   On or about May 31, 2011, plaintiffs sent Chase their June mortgage payment, made payable by personal check, via overnight Federal Express.

6

Defendants Chase accepted and acknowledged receipt of the June mortgage payment.

29.   On or about June 15, 2011, Chase caused to be recorded a Notice of Trustee's Sale, which indicated its intent to sell plaintiffs' Home at a foreclosure auction on July 11, 2011.

30.   In June 2011, Defendants Chase returned to plaintiffs their personal check representing the June 2011 mortgage payment claiming plaintiffs were required to pay with certified funds, despite the fact that no provision of the permanent HAMP Contract, or any other agreement between plaintiffs and Chase, specifies that payments must be made in certified funds.

31.   Throughout 2009 and up through the present, Chase's collection department personnel have harassed plaintiffs with weekly phone calls seeking alleged delinquent payments that had either been paid or were not due.  Plaintiffs have demanded Chase cease the harassment to no avail.  Chase's loan modification department personnel advised plaintiffs that they had no control over Chase's collection department personnel, that the departments did not communicate with one another and thus, Chase's loan modification department could do nothing to prevent the ongoing "collection" phone calls.  In addition, Chase advised plaintiffs that despite plaintiffs' negotiations with Chase for a mortgage loan modification, Chase would not halt foreclosure proceedings, thus subjecting plaintiffs to a "dual tracking" system placing their Home at risk of a foreclosure auction sale.

32.   On July 6, 2011, plaintiffs filed their initial complaint in this case.

33.   In April 2012, plaintiff Armando Velasco went to a local branch of Chase Bank to make his monthly mortgage payment as he did regularly.  However, on that occasion a representative of the bank rejected the payment and informed Mr. Velasco that the account had been "red flagged."  Plaintiffs' counsel telephoned defendants' counsel to obtain an explanation, but was given none.

34.   In May 2012, plaintiff Armando Velasco again attempted to make his mortgage payment at his local Chase Bank branch, and was again refused. Plaintiffs' counsel then drafted a letter to defendants' counsel offering to tender the mortgage payments directly to them, but received no meaningful response.

35.   In June 2012, plaintiff Armando Velasco again attempted to make his mortgage payment at his local Chase Bank branch, and was again refused.  On this occasion, Mr. Velasco asked for an explanation from Chase Bank representatives, who told Mr. Velasco that (1) his account was "red flagged," (2) Chase would accept no further payments on his account, and (3) his home would be foreclosed upon.

36.   This information deeply affected Mr. Velasco, who felt that his worst fears were realized despite the efforts of his family and his attorneys.  Mr. Velasco became distraught, lost sleep, felt ill, and eventually lost feeling in one side of his body.  After being taken to the hospital for treatment, Mr. Velasco learned he had suffered a stroke and spent several days and nights in the hospital.  His medical bills for this incident totaled over $60,000.

## JURISDICTION AND VENUE

37.   This action was initially filed in California state court and removed to this court by defendants under 28 USC §1441.

38.   This Court has jurisdiction under 28 U.S.C. §1331, in that this action arises under the Constitution, laws, or treaties of the United States because one cause of action alleges violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §1601 *et seq.* (RESPA).

39.   This court has supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. §1367(a) because they arise under California state law, and are so related to the claims arising under federal law that they form part of the same case or controversy.

40.  Venue is proper in the Central District of California under 28 U.S.C. §1391(b)(2), because plaintiffs reside in this district, the events and omissions giving rise to this claim occurred in this district, and the defendants conduct business in this district.

### FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT

### (Against Chase Defendants)

41.  Plaintiffs incorporate each and every allegation above as if fully set forth herein.

42.  There was an offer and acceptance of the HAMP Contract by all parties.

43.  Plaintiffs gave consideration that was fair and reasonable and have performed all conditions, covenants, and promises required under the HAMP Contract.

44.  Chase has breached the HAMP Contract by foreclosing on plaintiffs' Home, including filing a Notice of Trustee's Sale and intending to sell the property at auction on July 11, 2011.

45.  These actions are unlawful, without justification and/or excuse, and constitute a total and material breach of the HAMP Contract.

46.  As a result of Chase's breach of the HAMP Contract, plaintiffs suffered and will continue to suffer reasonable and foreseeable consequential damages resulting from such breaches, including increased payments, deterrence from seeking other remedies to address their default, unaffordable mortgage payments, and other damages for breach of contract.

47.  Plaintiffs have been damaged by Chase's breach of the HAMP Contract in an amount to be proven at trial but no less than $2,000,000 each.

48.   Plaintiffs have no adequate remedy at law because the modification described herein involves real property, and pursuant to Civil Code § 3387, money damages are presumed inadequate for its breach.

49.   Accordingly, Plaintiffs are entitled to specific performance of the HAMP Contract by Chase, and to recover attorney's fees and costs pursuant to the incorporated Loan documents described above.

## SECOND CLAIM FOR RELIEF

### ACCOUNTING

### (Against Chase Defendants)

50.   Plaintiffs incorporate each and every allegation above as if fully set forth herein.

51.   A dispute exists between plaintiffs and Chase concerning their respective rights and duties pertaining to the trust deed and the alleged default in trust deed payments.  Plaintiffs contend that they have timely made all payments due under the HAMP contract and deed of trust, while Chase contends that they have failed to do so and that plaintiffs owe Chase fees, expenses, outstanding principal and interest that plaintiffs dispute.

52.   Chase has provided conflicting and inconsistent information about the demands they are making under the trust deed.  The HAMP Contract states that after adding "unpaid and deferred interest, fees, escrow advances and other costs" to the outstanding principal balance the modified principal balance as of the modification effective date, April 1, 2011, is $525,732.99.  By contrast, the Validation of Debt Notice, dated April 5, 2011 and mailed by Chase to plaintiffs, states that the sum of the unpaid principal balance, escrow advances, fees and advances and accrued interest is $546,698.93.  Without proper accounting by Chase, plaintiffs do not know and cannot determine the amount of money they owe Chase and the reasons those funds are due.

53.   Chase should be ordered to provide a written accounting of all sums due under the HAMP contract and deed of trust, an explanation of each amount due, and an accounting of all sums paid from the inception of the loan to the present.

### THIRD CLAIM FOR RELIEF
### WRONGFUL FORECLOSURE
### (Against All Defendants)

54.   Plaintiffs incorporate each and every allegation above as if fully set forth herein.

55.   Defendants' conduct in commencing foreclosure of the property is improper and illegal in that plaintiffs have timely tendered all sums due under the deed of trust and HAMP contract.

56.   Defendants Chase and Quality Loan Service intend to sell and, unless restrained, will sell plaintiffs' Home, to plaintiffs' great and irreparable harm in that the property is Home to plaintiffs and two of their children and is their only significant asset.  Once the sale takes place, plaintiffs will have no right to redeem the property and will therefore lose it.

57.   The intended sale is wrongful and should be enjoined based on the facts alleged herein.  Plaintiffs have no other plain, speedy or adequate remedy and injunctive relief is necessary and appropriate to prevent irreparable loss to plaintiffs' interests.

58.   An actual controversy exists between plaintiffs and defendants Chase and Quality Loan Service concerning their respective rights and duties pertaining to plaintiffs' Home and the alleged default.  Plaintiffs contend that they have timely made all payments due under the HAMP contract and deed of trust, and defendants apparently contend that they have failed to do so and further, that plaintiffs owe defendants fees, expenses, outstanding principal and accrued interest that plaintiffs dispute.

11

59.   Plaintiffs desire a judicial determination and declaration of plaintiffs' and defendants' respective rights and duties under the HAMP contract and deed of trust.  Such a declaration is appropriate at this time so that plaintiffs may determine their rights and duties before their Home is sold at a foreclosure sale.

60.   As a direct and proximate result of Chase's conduct complained of herein, plaintiffs have suffered and continue to suffer general damages, mental and physical injuries, and economic loss, all to plaintiffs' general and special damages in an amount to be proven at trial, but no less than $2,000,000 per plaintiff.

61.   Chase's conduct is malicious, fraudulent and oppressive and therefore plaintiffs are entitled to punitive damages in an amount to be proven at trial.

62.   Plaintiffs are entitled to reasonable attorney's fees pursuant to the Loan documents described above.

## FOURTH CLAIM FOR RELIEF

### REAL ESTATE SETTLEMENT PROCEDURES ACT

### (Against Chase Defendants)

63.   Plaintiffs incorporate each and every allegation above as if fully set forth herein.

64.   Plaintiffs' attorney sent a letter to Chase on or about April 12, 2011, that is a Qualified Written Request under the Real Estate Settlement Procedures Act, 12 U.S.C. §1601 *et seq.* (RESPA).

65.   Chase failed to make the necessary corrections to plaintiffs' account or provide an explanation of why they contend the account is correct in their response to plaintiffs' Qualified Written Request, in violation of 12 U.S.C. § 2605(e).

66.   As a result of the foregoing violations, Chase is liable to plaintiffs for actual damages, including general damages, mental and emotional distress, physical distress, and economic loss as described herein, all to plaintiffs' general and special damages in an amount to be proven at trial, but not less than $2,000,000 per plaintiff, pursuant to 12 U.S.C. § 2605(f)(1)(A).

67.   As a result of the foregoing violations, Chase is liable to plaintiffs for statutory damages in the amount of $1,000 pursuant to 12 U.S.C. § 2605(f)(1)(B).

68.   As a result of the foregoing violations, Chase is liable to plaintiffs for costs and reasonable attorneys fees pursuant to 12 U.S.C. § 2605(f)(3).

## FIFTH CLAIM FOR RELIEF

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

#### (Against Chase Defendants)

69.   Plaintiffs incorporate each and every allegation above as if fully set forth herein.

70.   As a direct and proximate result of Chase's actions complained of herein, plaintiffs have suffered and continue to suffer extreme mental and physical distress.

71.   Chase's actions complained up herein were done with negligence of the extreme mental and physical distress which such action would cause plaintiffs.

72.   As a result of the foregoing violations, Chase is liable to plaintiffs for actual damages, including general damages, mental and emotional distress, physical distress, and economic loss as described herein, all to plaintiffs' general and special damages in an amount to be proven at trial, but not less than $2,000,000 per plaintiff.

## SIXTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### (Against Chase Defendants)

73.   Plaintiffs incorporate each and every allegation above as if fully set forth herein.

74.   Chase's conduct (a) in moving forward with a foreclosure of plaintiffs' Home after entering into a permanent HAMP contract with them, (b) in moving forward with a foreclosure of plaintiffs' home and taking other collection actions against plaintiffs when they had fully complied with other demands and

agreements of Chase, and (c) in knowingly and willfully providing an inaccurate Validation of Debt (VOD) statement that sought over $20,000 more than was actually due from plaintiffs, and (d) in taking the actions described in paragraphs 33 to 35 is extreme and outrageous conduct. Chase took these actions with the full knowledge that plaintiffs had a permanent HAMP contract with which they fully complied, that plaintiffs had fully complied with other demands and agreements of Chase, and with full knowledge that their VOD was inaccurate.

75.   Chase took these actions with full knowledge that plaintiffs were suffering from various medical conditions and disabilities.

76.   As a direct and proximate result of Chase's actions complained of herein, plaintiffs have suffered and continue to suffer extreme mental, emotional, and physical distress.

77.   Chase's actions complained of herein were knowing, intentional and willful and were done with full knowledge, substantial certainty or reckless disregard for the extreme mental and physical distress that such action would cause plaintiffs.

78.   As a result of the foregoing violations, Chase is liable to plaintiffs for actual damages, including general damages, mental and emotional distress, physical distress, and economic loss as described herein, all to plaintiffs' general and special damages in an amount to be proven at trial, but not less than $2,000,000 per plaintiff.

79.   Chase's conduct is malicious, fraudulent and oppressive and therefore plaintiffs are entitled to punitive damages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

## CONSUMER LEGAL REMEDIES ACT

### (Against Chase Defendants)

80.   Plaintiffs incorporate each and every allegation above as if fully set forth herein.

81.    Chase's conduct violates the Consumers Legal Remedies Act, Civil Code §1750 et seq. (CLRA).  Such violations include, but are not limited to:

(a)    Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, in violation of Civil Code § 1770(a)(14).  Chase claims that plaintiffs are in default of the HAMP agreement and deed of trust when in fact plaintiffs are current on all payments and money due.  In addition, Chase claims that plaintiffs owe them various fees, expenses, outstanding principal and accrued interest that plaintiffs do not owe them;

(b)    Inserting an unconscionable provision in the contract, in violation of Civil Code § 1770(a)(19).  Chase claims that the HAMP agreement and deed of trust allow them to foreclose on plaintiffs' Home when in fact plaintiffs are current on all payments and money due under the HAMP contract and deed of trust.  In addition, Chase claims that provisions of the HAMP contract and deed of trust allow them to impose on plaintiffs various fees, expenses, outstanding principal and accrued interest that plaintiffs do not owe to Chase. These provisions are unconscionable because they violate the letter and spirit of the HAMP contract and deed of trust, which provide that plaintiffs are not in default of their obligations if they timely make the payments plaintiffs have timely made.

82.    Plaintiffs have complied with all conditions precedent under the CLRA to seek injunctive relief under the CRLA.

83.    On information and belief, Chase has taken the same or similar actions toward other homeowners whose loans Chase has been handling over the last three years.  Unless enjoined, Chase will continue to engage in these unlawful acts and practices.  Chase and their officers, agents and employees, and persons acting in

1  concert, collusion, or participation with them should be enjoined pursuant to Civil

2  Code § 1780(a)(2) and as otherwise allowed by law from employing any of the

3  unlawful conduct, methods, acts, or practices alleged herein or proven at trial.

4       84.   As a result of the foregoing violations, Chase is liable to plaintiffs for

5  costs and reasonable attorneys fees pursuant to Civil Code § 1780(e) and as

6  otherwise allowed by law.

7  <center>**PRAYER FOR RELIEF**</center>

8      WHEREFORE, plaintiff prays for judgment against defendants as follows:

9  <center>**ON THE FIRST CAUSE OF ACTION**</center>

10      1.    That this court enter an order and judgment directing Chase to perform

11  all conditions, covenants, and promises required to be performed under the HAMP

12  Contract.

13      2.    For general damages in an amount to be proven at trial but no less than

14  $2,000,000 each.

15      3.    For costs and reasonable attorneys fees pursuant to the Loan

16  documents.

17  <center>**ON THE SECOND CAUSE OF ACTION**</center>

18      1.    For a written accounting of all sums due under the HAMP contract and

19  deed of trust, an explanation of each amount due, and an accounting of all sums

20  paid from the inception of the loan to the present.

21  <center>**ON THE THIRD CAUSE OF ACTION**</center>

22      1.    That this court enter an order enjoining defendants from selling

23  Plaintiff's Home pursuant to the Notice of Trustee's Sale recorded on or about

24  June 15, 2011 or at any other time that plaintiffs are not in default of their loan or

25  the HAMP contract.

26      2.    That this court determine and declare plaintiffs' and defendants'

27  respective rights and duties under the HAMP contract and deed of trust.

28

<center>16</center>

3.      For general and special damages in an amount to be proven at trial, but no less than $2,000,000 per plaintiff.

4.      For punitive damages according to proof.

**ON THE FOURTH CAUSE OF ACTION**

1.      For general and special damages in an amount to be proven at trial, but not less than $2,000,000 per plaintiff, pursuant to 12 U.S.C. § 2605(f)(1)(A).

2.      For statutory damages in the amount of $1,000 pursuant to 12 U.S.C. § 2605(f)(1)(B).

3.      For costs and reasonable attorneys fees pursuant to 12 U.S.C. § 2605(f)(3).

**ON THE FIFTH CAUSE OF ACTION**

1.      For general and special damages in an amount to be proven at trial, but not less than $2,000,000 per plaintiff.

**ON THE SIXTH CAUSE OF ACTION**

1.      For general and special damages in an amount to be proven at trial, but not less than $2,000,000 per plaintiff;

2.      For punitive damages according to proof.

**ON THE SEVENTH CAUSE OF ACTION**

1.      That this court enter an order enjoining defendants, pursuant to Civil Code § 1780(a)(2) and as otherwise allowed by law, from employing any of the unlawful conduct, methods, acts, or practices alleged herein or proven at trial.

2.      For costs and reasonable attorneys fees pursuant to Civil Code § 1780(e) and as otherwise allowed by law.

/ / /

1

**ON ALL CAUSES OF ACTION**

2
    1.     For costs of suit herein;

3
    2.     For such other further relief as the court may deem just and proper.

4

5
                             NEIGHBORHOOD LEGAL SERVICES
                             OF LOS ANGELES COUNTY

6

7

8
Date:   August 17, 2012            <u>/s/ Antonio Hicks</u>

9
                             Antonio Hicks
                             Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

**JURY DEMAND**

Trial by jury of all issues is demanded.


NEIGHBORHOOD LEGAL SERVICES
OF LOS ANGELES COUNTY


Date:   August 17, 2012                    /s/ Antonio Hicks
                                           Antonio Hicks
                                           Attorneys for Plaintiffs